(C. D. 836)

EASTMAN KODAK CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 8, 1944)

*William F. Shepard* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett* and *William J. Vitale* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case involves the importation from Canada of damaged films. Duty was assessed thereon at the rate of 7½ per centum ad valorem as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930, as amended by the Canadian Trade Agreement (T. D. 49752). The merchandise was entered as American goods returned under paragraph 1615 (d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, under the provision reading:

(d) Photographic films light-struck or otherwise damaged, or worn out, so as to be unsuitable for any other purposes than the recovery of the constituent materials, provided the basic films are of the manufacture of the United States.

At the trial the plaintiff established that the basic photographic films from which the instant merchandise was punched were shipped by the plaintiff to Canada in large rolls 40 inches wide by 2,000 feet long. In Canada the films were cut to 35 millimeters wide and 1,000-foot lengths and there treated by coating with a sensitized emulsion. This emulsion converts the basic films into positive photographic films. All operations thereafter were in a darkroom to prevent the films from becoming light-struck. There they were run through a perforating machine which punches holes in the two edges of the films to fit the same for use in a motion-picture projector. These punchings measure approximately ⅛ of an inch in diameter and when punched from a reel of films fall into a box attached to the machine. They are then taken from the darkroom from time to time and placed in a

receptacle preparatory for shipment to the salvage department in Rochester, New York. When taken from the darkroom the punchings or small pieces of films become light-struck.

When these punchings or small pieces of films are returned to the salvage department of the plaintiff's plant in Rochester, they are dumped into a tank of hot water and allowed to soak from 24 hours to several days in order to loosen the emulsion. The outlet of the tank in which these punchings are placed is covered with a very fine mesh screen to prevent the punchings from emerging from the tank with the wash water. From this tank the punchings are placed in a tube washer, which is called a punchings washer because it is used exclusively for that job, and consists of a round tank equipped with a revolving shaft with blades on the end that revolve in the mass of punchings. In this tube washer the punchings are finally cleaned of the emulsion. Then the water is drained from the tank and the punchings are placed into a revolving continuous drier and subjected to continuous hot air. The punchings when dried fall out of the discharge end of the drier free from the emulsion and consist only of basic film. The material is then sent to what is called the "dope department" where it is put back into solution ready to be used again for film base. In the soaking and washing stages of the foregoing process, the water takes up the emulsion which contains the gelatin and also silver. The silver is separated from the solution and again made suitable for photographic purposes. The gelatin is not recovered.

In the salvage or recovery department punchings are not mixed with other types of scrap because of size. When large pieces of scrap photographic films are received they are first run through a chopping machine where they are reduced in size to 1 or 2 inches square. Such material is then treated with hot water, washed, dried, and the pieces of basic films sent to the "dope" department. The only difference is that the punchings are chopped ahead of time so that the chopping stage is eliminated. Photographic films which had been light-struck or otherwise damaged which were shipped along with these punchings were admitted free of duty under the foregoing paragraph.

The exhibits admitted in evidence at the trial consist of the so-called punchings of films; a piece of basic film as shipped from the United States to Canada; a piece of the same film after being treated with the emulsion and being light-struck; a piece of light-struck film when cut to a width of 35 millimeters and in the condition when entering the punching machine; a piece of such film after the punching operation; and a photograph of the punching machine illustrating the unpunched film entering at one side and emerging at the other with perforations upon the two edges.

One witness testifying for the plaintiff was in the experimental department of the plaintiff's plant. Counsel for the plaintiff showed him a slide which the witness stated consisted of two pieces of glass having the small punchings, such as are imported herein, mounted inside, and that such films were obtained from the perforating machine in the darkroom and printed so as to secure a photographic image, and then mounted in the slide.

Counsel for the Government objected to any testimony regarding the slide because the punchings mounted therein were not light-struck and therefore not representative of the imported merchandise. Counsel for the plaintiff stated that the offer was made to illustrate that the imported material was in fact photographic films by demonstrating that punchings, not light-struck, taken from the same machine and from the same operation, can be subjected to light and printed out with a photographic image, and thus visually showing they are actually photographic films even though of the size of these punchings.

The judge on circuit ruled that such evidence was not material and the objection of Government was sustained. We are of the opinion that the ruling of the trial judge was erroneous inasmuch as the plaintiff was merely attempting to introduce an exhibit to illustrate that "punchings" when not in a light-struck condition were in fact photographic films and capable of producing an image the same as any other photographic films. Consequently we think the illustrative exhibit was proper and should have been admitted.

In order to obtain an exemption from duty under paragraph 1615 (d) it is necessary for the importer to establish, first, that the merchandise consists of photographic films which have been light-struck, or otherwise damaged, or worn out; second, that such photographic films are unsuitable for any other purpose than the recovery of the constituent materials; and third, that the basic films are the manufacture of the United States.

The plaintiff contends that inasmuch as the evidence establishes without contradiction that the punchings were cut from photographic films, they are in themselves photographic films; and as it was further shown without contradiction that the punchings were light-struck and were unsuitable for any other purpose than the recovery of the constituent materials, and that the basic films were manufactured in the United States, the evidence has brought the imported product squarely within the provisions of paragraph 1615 (d).

The Government on the other hand contends that the imported merchandise does not consist of light-struck photographic films because the plaintiff has failed to prove that the punchings are photographic films, but that obviously such punchings are refuse, never intended to be a part of a merchantable article. It is argued that the photographic film referred to in paragraph 1615 (d) is a finished prod-

uct and not a raw material or a residue left after the finished product is completed, and that such residue is not and never was photographic film light-struck or otherwise damaged or worn out, as contemplated by the statute, and consequently such punchings are dutiable as a waste, not specially provided for.

Paragraph 1615 (d) manifestly provides free entry for a waste product, to wit, photographic films, when in a certain condition. The plaintiff has here established that the basic film material in these punchings was the product of the United States. Also, it is clear from the evidence, that after the basic film material was imported into Canada, emulsion was applied thereto and it was transformed into photographic films. Thereafter, such product was cut into certain lengths, from which undoubtedly a waste resulted; that when cut into certain widths a waste would have accumulated. Apparently such waste is admitted as exempt from duty under paragraph 1615 (d). When, however, small pieces of photographic films are removed so that the films will fit into a projector in a motion-picture machine, these small pieces of such photographic films become waste, the only distinction between such waste and other waste of photographic films being their size. Paragraph 1615 (d) does not place a limit upon the size of the material to be admitted as photographic films. If the material consists of photographic films under the provision therefor it is immaterial whether such films are torn into small pieces, or are in large strips, or in little squares ⅛ of an inch in diameter, so long as they are light-struck or otherwise damaged, unsuitable for any other purpose than the recovery of the constituent materials, and the basic film material therein was manufactured in the United States. The punchings in question fall squarely within the paragraph, and the evidence shows that these punchings are treated for the recovery of the constituent materials in exactly the same manner as larger waste pieces.

For the reasons stated we hold such "punchings" of photographic films which have been light-struck properly entitled to free entry under the provisions of paragraph 1615 (d) of the Tariff Act of 1930, as amended.

Judgment will be entered directing the collector to reliquidate the entries and make refund of all duties taken.